1935-37, 20-32-52. Belkis Waliska Corea Escoto et al. versus Merrick Garland. Oral argument not to exceed 15 minutes per side. Miss Joiner for the petitioners. Good afternoon, your honors, and thank you for this opportunity to present arguments on behalf of the petitioners in this case. I've reserved three minutes for rebuttal. Thank you. May it please the court. The outcome sought by the government in this case endangers victims of domestic violence who are in removal proceedings by foreclosing access to the remedy that Congress created for them, the U-Visa. The positions taken by the government assist domestic abusers and ensuring the swift deportation of cooperating victims, regardless of their eligibility for legal status. Today I will address three of the issues presented in this case. First, I will address the board's abuse of discretion and refusing to remand this case to the immigration judge for consideration of a continuance under matter of Sanchez Sosa. Second, I will address why this court should follow the Fourth and Seventh Circuits in overruling matter of Castro Tum by adopting the reasoning of the dissenting opinion in Hernandez Serrano V. Barr. And finally, I will address why this case must be remanded for fact-specific consideration of Miss Corea's particular social group consistent with this court's holding in Juan Antonio V. Barr. Before you undertake those three arguments, could you briefly address your filing this morning with the court? Absolutely, Your Honor. So on Friday, and I apologize that this was filed so recently, but as you know, so many things have been happening in this case. I'm just bringing to the court's attention that ICE has entered into an agreement for 90 days to not oppose any continuances for people with pending U-Visa petitions who are in removal proceedings, and also agreed not to deny any stays of removal for people who already have a final order of removal. So I wanted to bring this to the court's attention to show that the government, it shifted policy under the prior administration, and now it appears to be once again reviewing its policy towards victims of domestic violence and other qualifying crimes in protecting them once again under the laws and the regulations. And you would suggest that even though the order entered was not in your case, what is your argument for why it should apply here? It's a nationwide stay. So it does actually apply in this case if my client were still in removal proceedings or if she were to file a stay of removal. So it applies nationwide to anyone in any immigration court who is in the procedural posture she was before we had to appeal her asylum denial to the board. So if this case were before the immigration court today and I were to request the continuance, ICE could not oppose that continuance. But she could still get, if you sought a stay of her order of removal now, she could still get that under this. Assuming that this, has the district court accepted this? Yes, it was a joint motion and the court granted the order on Friday. On Friday. Yes. So have you filed, asked for a stay of removal or you haven't asked for one? Because this case is still pending before the Sixth Circuit and ICE has not made any direct moves to detain or to remove my client, I've not requested an administrative stay at this point. Also an administrative stay. But you could, and then you'd get one, right, under this. I keep holding up this piece of paper. It's the piece of paper you filed this morning. Yes, that is my understanding of the agreement that ICE has entered into. Okay. So what effect does that have on our case? It sounds to me like regardless of what we decide, you can still get a stay for your client pursuant to this agreement. Absolutely, Your Honor. But in the interest of efficiency, it is so much more efficient for all the administrative agencies that handle the processing of immigration claims for a continuance or administrative closure to be used at the earliest point of adjudication. For example, in this case, it would have avoided, had a continuance or administrative closure been granted in this case, it would have avoided a hearing on the merits. So the immigration judge could have heard another case instead of this one. It would have avoided the BIA appeals. Isn't that all water under the bridge at this point? Like they already made the determination on the merits. So this is just a 90-day pause, first of all. So there's nothing that I can totally rely on that my client will be safe and will be able to remain in the country. If some other decision is made after that 90-day pause. I'm sorry, it's a 90-day stay? Or you're saying if she applies in the next 90 days, she gets a stay pending the resolution of her U visa? There's two stays. I apologize, Your Honor. This joint motion that was granted by the Connecticut District Court on Friday is a stay of ICE being able to oppose continuances and a stay of ICE being able to deny administrative stays. So were she to request an administrative stay of her final order today, they could not deny her request for a stay until June 15th. On that date, they could grant it, they could deny it, they could just hold on to it. But it's not necessarily a guarantee that she would not be removed from the country on June 16th. I see. Okay, thank you. And furthermore, it is just so important in the interest of efficiency for a continuance to still be granted at this early stage in removal to avoid the agency from having to go through all of these unnecessary hearings, the unnecessary processing of these appeals, when it could have just temporarily put the case on the shelf and proceeded to make decisions and all of the other cases on its overburdened docket. So I understand that. But I don't understand how that affects your client. Like there's already an adjudication on the merits with respect to your client. So how does sending it back for a continuance. I mean, we would have to vacate the order that was already entered. And if there's no error in that order. I don't, I don't understand like how do we vacate the order that was entered if there's no error in the order. So the error was in the Board of Immigration Appeal. Well, there was error in the asylum underlying asylum claim. And this case actually does need to be remanded for case specific consideration under Juan Antonio V. Barr, because the board found that that particular social group in this case was completely foreclosed by matter of a B. Despite in, in Grace V. Barr and Grace V. Whitaker, the DC court noting that the word generally used in matter of a B, as well as the, the guidance implementing the credible fear interviews saved that case from being impermissibly from being impermissibly narrow. So the court. So the court in that case actually says that the article, the particular social group in a B itself might actually be cognizable, given the circumstances of a case, and whereas your argument. I'm sorry. Go ahead. Go ahead. Go ahead. Even under matter of a B. What's your argument for that. Absolutely. So what saves matter of a B as far as the court in Gracie bars concerned, is that word that it says, generally, these cases will not be successful, and only because it used that word. Generally, did it say that it did not completely foreclose a whole class of people who might be requesting relief. So I would say that that it's very instructive to look at the discussions in Grace V. Barr about domestic violence claims and circularity in particular, which are in accord with this court's holding in Juan Antonio V. Barr, which reinforces the requirement of a fact specific case by case analysis. In any case, even where it appears at first blush that the harm feared is being defined by the particular social group. So I understand that argument. The argument is a B does not say all such groups are foreclosed, but still it seems to me that you would need to just not say it could be distinguishable but how it is distinguishable. So why is your social group that you propose different than the one rejected in a B? Is there something about it seems to me you haven't made any argument. There's something about Honduras that's different. There's something about the particular. I just haven't heard that in your briefing. Absolutely. So in this case in particular, the judge determined that she didn't have a reasonable fear because back in 2011 in Honduras, her abuser was held by police for 24 hours after an assault. Now the country conditions that we have submitted show the marked deterioration in the Honduran government's interest in controlling folks like the abuser that occurred around 2012, 2013, 2014. We did not see back in 2011 the same conditions that we see today. So this is kind of a change circumstances case where my client's claim became right based on the abuse that occurred here and the threats that he made specifically to her here that as soon as she was deported to Honduras, he would find her. So it's both physical and mental abuse. Absolutely. Absolutely, Your Honor. And in this case, he continued even after an order of protection, he continued to send notes through his son that he was eager for the order of protection to expire or for her to be deported so that he could continue stalking and terrorizing her and harming her. And the fact that he was using their son shows that she has that immutable connection. There's nothing she can do about getting rid of the fact that they have a child in common together. So in this case, based on the fact that she has no other family in Honduras that can help her care for this family or that can help her care for her son, she has no economic opportunities. And so for her specific case where she doesn't have any family support and she has this tied to him through the son, that's what makes her case different. Judge Strange, do you mind if I ask a question? Please do. I understand that those are the circumstances of her case, but I'm not sure how that makes her social group different than the social group in AB. So it is similar. I will admit that it is very similar in the articulation of it. But once again, as Grace V. Barr found, that could be a cognizable social group in Matter of AB. And I think that the fundamental problem with Matter of AB is that the government can both claim that it doesn't represent a change in the law while also claiming that now it forecloses an entire class of people whose particular social groups had previously been recognized. And so I think that Matter of AB itself should be abrogated for that fundamental contradiction in it where it tries to both change the law, but without changing the law. I don't see any argument in your briefing about that. You never claim AB is wrongly decided. You never claim the Attorney General overstepped his bounds in issuing the decision. You're saying it now at oral argument, but I didn't see it presented in your papers. Well, Your Honor, I did explain that even under Matter of AB, whichever way you cut it, my client's claim still succeeds. And it should be analyzed both under Juan Antonio and Matter of ARCG, which is still in the Sixth Circuit, according to Juan Antonio. But doesn't Juan Antonio rely on Grace Whittaker, the district court having abrogated the rule, but now the D.C. Circuit has overruled Grace Whittaker? So it's not abrogated, right? Apologies. Yeah, so my question is just like, I don't understand the effect of Juan Antonio. So Grace v. Barr did not completely change what Grace v. Whittaker said. And again, the arguments in Grace v. Barr itself say that the particular social group articulated in Matter of AB could be cognizable under Grace v. Barr because of that word generally that's used. That it does not foreclose this entire class of particular social groups. So I would look at that whole discussion in that case on domestic violence claims and circularity in particular as very instructive in this case. All right, but before we leave, I think there's some confusion, perhaps on my part, perhaps in the record. Does your client have a pending I-192 waiver application or not? Yes, Your Honor, she does. It was filed concurrently with her U-Visa application. All right, that helps me. There was some discussion otherwise. All right, you will have your rebuttal time. Ms. Glasser. Good afternoon. May it please the court, Sherry Glazer appearing on behalf of the United States Attorney General. Your Honors, Ms. Correa-Escoto has simply failed to meet her burden to show eligibility for either asylum, withholding of removal, a continuance, or administrative closure. The government's contention that this court's decision in Hernandez-Serrano completely forecloses that last claim. And to start off with what this court has been discussing regarding Antonio, as the government pointed out in footnote in the 28-J that the footnote in the majority opinion in Antonio that refers to the district court decision in Grace, the language that concerned this court in that particular footnote was in fact overruled by the D.C. Circuit and is really no longer good law. The D.C. Circuit held that the Attorney General in matter of A.B. did not foreclose domestic violence claims and that each claim has to be evaluated on its own merits according to the evidence that the applicant presents. And that's exactly what the board did here. The board looked at the evidence that petitioners presented and found that they failed to show that Honduran women unable to leave the relationship did not meet the circularity requirement, and they didn't show that it was socially distinct in Honduran society, nor that it was sufficiently particular. And, you know, as the government points out in its brief, petitioners did not make any true argument in their opening brief regarding any of those requirements, and therefore really waived the opportunity to do so. Here's what gives me some concern. It seems like we've got that mix here where the government really did not do an intensive look. The government was a pretty quick response. And then we've got the question of what has been presented before us, which was not elaborately defined either. But the concern that I have was that in looking at what the government's decisions were, it really was very much a kind of one instance issue, taking away the phone, breaking the phone, and really does not discuss the mental abuse, the threats that he's going to follow her and kill her, the threat that he will never let her be with another man, that even that he was going to have her deported, regardless of whether that seems to be a nonsensical threat. Why isn't all of that considered together in making that determination? To make the determination of, I guess, if I could ask a clarifying question, are you referring to all of that being considered in the aggregate to determine if her group is legally cognizable, or whether she showed a reasonable possibility that she will in fact be harmed? Because those are two separate requirements that are each dispositive of her claim. It's a good question. Perhaps you should address both because I'm thinking of it in terms of this physical or mental abuse in the U visa concept, not just a one item issue, but the whole course of conduct. Sure. So, the first argument the government would make is that, you know, to sort of take a step back to step one, to take a look at what petitioners argued in their motion to remand to the board when they argue that their case should in fact be remanded to seek a continuance. All they've argued to the board, the only argument presented was that petitioner cited matter of Sanchez Sosa and said that Ms. Correa Escoto filed a prima facie approvable U visa application. That's on page 21 of the record. That is the only argument that she presented to the board, and it is her affirmative burden to make these showings to show that everything that Congress set forth to be eligible for U visa is in fact present in her case that she did suffer this substantial physical and mental injury, which is defined in the regulation as showing. And there's a very good discussion matters and shows SOTA about this too on page 813, I believe it is about what an individual, what the applicant for U visa is required to show the board in order to show this prima facie eligibility, and it's showing the nature of the injury inflicted, the severity of the perpetrator's conduct, the severity of the harm suffered, the duration of the infliction of harm, the extent to where there's permanent or serious injury. To him or her, to their appearance to their health and mental soundness, and that one sentence that she presented to the board. Didn't discuss any of that so really she didn't give the board anything to work with and it's not the board's duty to take such a short sentence that doesn't really provide any support and go back and try to figure out what the argument would be. So that would be the first point that I would make and the second point I would make just to sort of point out for the court is, she could have requested a continuance before the immigration judge know nothing changed in regards to her pursuing a U visa between when she was in removal proceedings before the immigration judge, and when she appealed to the board. And, you know, she asked for administrative closure before the immigration judge, which was denied and once her case was completed she appealed to the board. And she only asked for a motion to remand to seek a continuance once Castro to was issued and she conceded that administrative closure was no longer available to her, but it's something that she could have asked for in the first place the entire time. And when we look at what she submitted, just to sort of hammer this in that the board was correct that she didn't show this prima facie eligibility even taking into account everything that she that she everything that she says didn't fact occur to her. When we look at the information that we have and you know the government understands that this record of course is based on or this case is of course based on the entirety of the certified administrative record, but you know, in dealing with an issue like a U visa, and a collateral form of relief that's adjudicated by another agency in this case of course USC is. It makes sense to look at what USC is going to have, and there's no evidence that it's, it has the entirety of the merits hearing what it appears it has is the status certification, which is on page for 13 of the lead case and for 35, the consolidated case, and in response to the question asked provide a description of any known or documented injury to the victim. All that's written is no signs of injury reported. And then we look at the sheriff's report which is presumably also submitted with the U visa petition, and it says that Hector pulled her pulled. Ms Korea Scoto by the hair that Hector was angry, causing problems that she feared for her well being, and that she did not have any signs of injury, and then her personal declaration says that Hector was violent mistreated her physically, and he threatened to kill her to take her children, but there's no evidence in any of that of the duration of the inflicted harm any harm much less serious harm to her appearance, any permanent harm to her appearance, or any substantial and permanent injury. Due to due to the threats any any mental injury. That's a really hard argument to make when your spouse is threatening to kill you as soon as he gets the first chance, and you're impacted by it over time. I understand, you know, the government would go back to the first argument that that is in fact, that's her burden to present to the board and that one line that she submitted on a prima facie approvable UV as a petition, without making that argument herself is, it's just not sufficient and that's really what we have in this case, and, and she was represented by counsel below correct I mean before I believe so. Yeah, that's what I thought is, is, does it make a difference that really what was going on here was that she was attempting to correct the BIAs error when it said that the IJ had in fact assessed her primary prima facie eligibility for the UV so when that real factual analysis did not exist in the IJs opinion is that not the problem. I, the board should never have put in that initial phrase I mean that's a government can't contend that that is not something that was incorrect but when you look at the rest of that paragraph. The board did engage in its own analysis now again it never should have said it agreed with the immigration judge that she didn't show good cause, because of course, government can't contest that she never asked for continuance before the immigration judge so that simply isn't true. But when you look at the second phrase of that particular sentence and when you look at the last sentence in that same paragraph, both of them say that she didn't. She didn't show prima facie eligibility for the visa, the last sentence specifically says she did not present any persuasive evidence that she's likely to succeed on the visa petition, or the delay to allow for its adjudication would affect her proceedings, and again that's all she did was cite Sanchez Sosa and say she filed a prima facie approvable you visa application so the board absolutely was correct but she did not meet the affirmative burden. That is her burden to meet again it's not the burden for the board to try to figure out what to what she's trying to refer to, to support that she didn't refer to any evidence that was before the immigration judge she didn't even cite to say, when I say this I'm referring to x y&z she didn't submit any of that with her motion to the board. That's all she submitted was that one line and that one line is, you know, it doesn't meet the burden that she is in fact required to meet. And with regards to your question about the particular social group, unless the support of any other questions on the continuance. I have one other question on where Korea is in the queue. I'm trying to understand, do you know where she is in the UV is a queue. Yes. I don't know exactly where she is but I did look to see her petition was filed with the Vermont Service Center, and you can look on the website and it gives some information about visa petitions that were filed at a certain time, and the time that it refers to now is petitions that were received in April 2016 and it says the petitions that were received in April 2016, that the adjudicator application time right now is 59 to 59 and a half months. So, about five years or so so assuming that that remains constant through about a year because if I remember correctly I think her UV is a petition was filed in August 2017, we're probably looking at, you know, I can't give an answer for sure but based on that about five years after hers was filed so that would be 2022 probably about August 2022, give or take. And that, that is before it would be. It would reach an adjudicator or before it would be decided. My understanding is that's when it would be decided around that time. Got it. And is it still the government's position that regardless, she can she could be removed and still be eligible, or is that not the, or is it also I guess you can clarify to the extent you know what's going on in Homeland Security with this new agreement. Miss Joyner said that the agreement is that there, there won't be any removals until June 15. Is that how you understand it as well or is it if you file until between now and June 15, we won't remove you until your UV application is decided. No, it's my understanding that, you know, as I pointed out in my response it's the government's position that because that particular district court case the center of it is challenging the way ice has been adjudicating stays of removal that individuals who have a pending you visa have asked for and it's not an issue here so that that particular agreement that was decided on by those two parties doesn't apply but it's my understanding that for the next 90 days. If somebody has a UV has a UV is a pending that ice will not remove that that individual. I'm sorry, let me just back up for a minute. You mean you understand that that is true across the board, or it's only true with respect to people who are raising the claim that was also at issue before the District of Connecticut. That's a good question. To be honest, I, I'm not totally sure but it was just today so yeah yeah but in reading, you know, the only thing in the documents that I haven't in reading. So, there isn't an order by the judge that's actually downloadable it's just a text order saying that I can't remember if it's male or female that he or she is going to grant what the parties asked for in the joint status report and in the joint status report, it makes clear that this 90 days of not removing an individual or ice just saying it will not deny any stays of removal in individuals who are seeking a visa. That is to protect the parties and their clients. So the way I read that on first glance, is that because petitioners are not a client of, and you know are no are not involved in the case at all because they aren't seeking a stay of removal on first glance I. My answer would be that I don't think it applies to them but you know I'll be honest I I'm not sure I haven't talked to the council who's handling it so I, I don't know how they have been interpreting it or how he's been interpreting it, but that would be my sort of first glance answer. Thank you. That's helpful. And it's the 90 day time period, the opportunity for the agency to make a new determination going forward of how these issues are handled. It's my understanding that the 90 day is to give us a chance to determine if it's going to change the way it adjudicates stays of removal or request for stays of removal by individuals who are seeking a visa. Thank you. Thank you. Join your rebuttal. Thank you, Your Honor. First of all, I would like to discuss the issue of prima facie eligibility and note for the court that it was not until the government's brief filed in opposition before this court that any agency engaged in any prima facie analysis whatsoever. Whereas I did, rather, the petitioners did present these arguments in full in clear details in their motions for administrative closure. Now, the threshold determination for both the continuance as well as for administrative closure is that prima facie determination. So even though at the time of this case was before the immigration judge when there were two options to have her, her proceedings pause either through the administrative closure or through the continuance. Either way, a threshold prima facie determined determination is required. And the Department of Homeland Security had the opportunity to present arguments that it did not believe that my client made a prima facie case and it did not do that. Instead, it said that she could pursue her U visa abroad. Furthermore, the Department of Homeland Security has a system through which it can request a prima facie determination directly from Vermont Service Center, and it did not request that in this case. Had it wished to contest prima facie eligibility, it certainly could have done that. The immigration judge did not engage in any kind of prima facie analysis. Neither did the board, even though it said that it found my client to be not prima facie eligible. It just stated that as a bald conclusion. It cited L.A.B.R. and it said she didn't that your client didn't present any evidence. I mean, I don't I guess it could have listed all the factors of L.A.B.R. and then said she doesn't meet any of these. But I mean, I don't know how much more we wanted them to do. Well, your honor, I would have liked to see any analysis by the board regarding my client's prima facie eligible eligibility or the L.A.B.R. factors, which include diligence. But where did you present that to them? In other words, you're asking the BIA to analyze factors when all your client said to them is. I have presented a prima facie eligible case, which is a conclusion. Your client didn't say here are the factors. Here's how I meet factor one. Here's how I meet factor two. Here's how I meet factor three. So to ask the agency to say more than you didn't support your motion. I don't know what we want them to do. Your honor, there were very clear written arguments on this before the immigration court and that record is before the board. But it's not addressed to a continuance. You're saying there it was addressed to a different question. It was the prima facie eligibility for relief. And at the time, because there were these two ways that one could request a pause of removal proceedings. Administrative closure was sought because at the time, that's what the board was encouraging people to request due to the new visa backlog. And you can see the unpublished decision in which the board is advising the immigration court to Is encouraging the immigration court to consider administrative closure over a continuance and that's at 455 to 57 of the second record. But it's well supported all of the arguments concerning eligibility for relief. The impact that relief would have on the conclusion of the proceedings, as well as her diligence under matter of L.A.B.R. and then L.N.Y. In pursuing this relief, all of those demonstrate that she is eligible for a continuance. The failure to request a continuance on the front end was because the board was telling us then to request administrative closure as an appropriate remedy due to the new visa backlog. Got it. Any further questions? Judge Bush? Judge Larson? No further questions. Well, we thank you both for your arguments and your briefing. We will take the matter under advisement and issue a decision in due course.